acm

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RAMON WORLDS and** ) | |
| **MIKE GAINES,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | |
| ) | **Case No. 04-4042-JAR** |
| **TOPEKA PIZZA, INC., d/b/a** ) | |
| **DOMINO'S PIZZA, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND DISMISSING STATE LAW CLAIMS

This matter comes before the Court on defendant, Topeka Pizza, Inc.'s, Motion for Summary Judgment. (Doc. 32.) The Court has considered the arguments set forth in the parties' briefs along with the record submitted and is now prepared to rule. As described more fully herein, the Court **GRANTS** defendant's summary judgment motion.

### I.     Uncontroverted Facts

The following facts are derived from the summary judgment record and are either uncontroverted, stipulated to, or viewed in the light most favorable to the plaintiffs. On the evening of November 19, 2002, plaintiffs Ramon Worlds and Mike Gaines, two African-American males, entered defendant's restaurant in Topeka, Kansas. Defendant's restaurant is a delivery and carry-out facility,

which does business under the name Domino's Pizza, Inc. ("Domino's"). The restaurant consists of one room with a counter for customers to order or pick up a phoned-in pizza order. Before entering the restaurant, plaintiffs waited outside for approximately two minutes. Plaintiff Gaines asserts that plaintiffs did not immediately enter the restaurant because there were no employees at the counter and they were unsure whether the restaurant was open for business. Plaintiff Worlds claims that plaintiffs did not immediately enter the restaurant because there was a customer inside and the small size of the restaurant could not accommodate them. Before entering the restaurant, both plaintiffs were wearing hooded sweatshirts with the hoods over their heads.

Conrad Cahoj was the only employee working in the restaurant that evening. He saw the plaintiffs waiting outside of the store before they entered. Prior to November 19, 2002, five armed robberies had occurred at defendant's restaurant. These five armed robberies took place on February 19, 2001; September 11, 2001; July 16, 2002; July 23, 2002; and September 23, 2002. Because plaintiffs waited outside for two minutes before entering and plaintiffs were wearing their hooded sweatshirts with the hoods up, Mr. Cahoj believed plaintiffs were "casing" the restaurant for a robbery. Mr. Cahoj called 911 but hung up before the dispatcher answered.

After plaintiffs entered the restaurant, they both removed their hoods when they noticed Mr. Cahoj was acting nervous. Plaintiff Worlds asked Mr. Cahoj for a job application. Mr. Cahoj left the counter to retrieve applications from a back room. During this time, the 911 dispatcher returned Mr. Cahoj's call. Mr. Cahoj answered and made it appear that he was taking a pizza order. Mr. Cahoj attempted to describe the incident in the store by letting the dispatcher guess what plaintiffs were doing

in the store. This conversation was tape recorded by 911.[1] The 911 dispatcher asked, "You got an armed robbery?" Mr. Cahoj answered, "Uh, not sure yet." The 911 dispatcher asked, "They got guns?" Mr. Cahoj responded "No" and then "Not yet." The 911 dispatcher asked, "Everyone okay over there?" Mr. Cahoj answered, "So far." The 911 dispatcher asked, "No mask?" Mr. Cahoj responded, "No."

Mr. Cahoj then put the 911 dispatcher on hold. Mr. Cahoj returned to the counter, and he offered both plaintiffs job applications. Plaintiff Worlds took an application, but Plaintiff Gaines did not take an application. Plaintiff Gaines asserts that he did not take an application because he was tired of waiting. Plaintiffs then exited the restaurant. Mr. Cahoj returned to his 911 telephone conversation and told the dispatcher, "You know these guys didn't pick up a gun or anything. But they came in and they stood outside the building and they got black sweatshirts on and black hooded shirts and I have been cased like this so many times over here. This is the MO that they do all the time."

Outside of the restaurant, plaintiffs were confronted by members of the Topeka Police Department. Plaintiffs were handcuffed face down on the ground. Plaintiffs were detained for about thirty minutes while the police officers investigated. Plaintiffs were then allowed to leave, and they were not arrested. Neither plaintiff Worlds nor plaintiff Gaines has sought medical or psychiatric treatment as a result of the November 19, 2002 incident. However, both plaintiffs allege that they have suffered mental injury in the form of embarrassment and humiliation.

On April 2, 2004, plaintiffs filed a complaint against defendant alleging that they were victims of

---

[1](Doc. 33, ex. J.)

3

racial discrimination as a result of the events at defendant's restaurant on November 19, 2002. Plaintiffs have brought a cause of action under 42 U.S.C. § 1981 for racial discrimination as well as state law claims for the tort of outrage, defamation false light,[2] and negligent infliction of emotional distress. Plaintiffs also request attorney fees and punitive damages. Defendant has filed a Motion for Summary Judgment on all of plaintiffs' claims.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[4] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[5] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[6]

The moving party bears the initial burden of providing the court with the basis for the motion

---

[2] Plaintiffs initially brought claims for defamation per se and defamation false light in their complaint. In plaintiffs' response to defendant's motion for summary judgment, plaintiffs request that their defamation per se claim be withdrawn because plaintiffs cannot meet one of the required elements of a defamation per se claim by proving damage to plaintiffs' reputations. Therefore, plaintiffs' defamation per se claim is DISMISSED. Plaintiffs continue to assert their defamation false light claim.

[3] Fed. R. Civ. P. 56(c).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Id.* at 251-52.

and identifying those portions of the record that show the absence of a genuine issue of material fact.[7] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[8] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[9] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set for specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[11]

### III.  Discussion

#### A.  *Section 1981 Claims*

Plaintiffs allege that defendant, by and through its employee, Mr. Cahoj, discriminated against plaintiffs because of their race in violation of 42 U.S.C. § 1981. "[T]o establish a prima facie case of [racial] discrimination under § 1981, the plaintiff must show: (1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."[12] As to the third

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[9] *Id.*

[10] *Id.*

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[12] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001) (citation omitted).

requirement, "[s]ection 1981 establishes four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments."[13]  Defendant contends that summary judgment should be granted because plaintiffs cannot meet the second and third requirements to bring a section 1981 claim.  Because the Court finds that plaintiffs have not presented a genuine issue of material fact as to the second requirement, discriminatory intent, summary judgment must be granted in favor of defendant on plaintiffs' section 1981 claim.[14]

### 1.   *Discriminatory Intent*

With respect to the second requirement, defendant asserts that plaintiffs cannot establish that defendant engaged in intentional discrimination on the basis of race.  A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination.[15]  Plaintiffs offer no direct evidence of discrimination.  Therefore, the Court must determine if there is sufficient indirect evidence of discrimination for plaintiffs to survive summary judgment.

---

[13]*Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

[14]Although the parties dispute whether plaintiffs have met the third requirement by showing that defendant interfered with plaintiffs' right to make and enforce a contract or plaintiffs' right to full and equal benefits under the law, the Court need not address these issues.  Plaintiffs have failed to present a genuine issue of fact regarding the second requirement, whether defendant intended to discriminate on the basis of race.  Therefore, plaintiffs' section 1981 claim cannot survive a summary judgment motion.

[15]*Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

The Supreme Court established the framework for analyzing circumstantial evidence of discrimination in *McDonnell Douglas Corp. v. Green*.[16] "While *McDonnell Douglas* involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981."[17] Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination."[18] Once the plaintiff has established a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory justification for taking the disputed action.[19] If the defendant makes this showing, the burden shifts back to the plaintiff to provide evidence showing that the defendant's justification is a pretext for discrimination.[20] "Importantly, the three-part *McDonnell Douglas* burden-shifting analysis is limited to the summary judgment context."[21] "Once there has been 'a full trial on the merits, the sequential analytical model adopted from *McDonnell Douglas* . . . drops out and we are left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that the disputed action was taken against'" a plaintiff because of his or her protected

---

[16] 411 U.S. 792 (1973).

[17] *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999).

[18] *McDonnell Douglas*, 411 U.S. at 802. *See also Duran v. Community First Bankshares, Inc.*, 92 Fed. Appx. 756, 762 (10th Cir. 2004) (holding that plaintiff's section 1981 claim must fail at the summary judgment stage when plaintiff did not offer any evidence to establish a prima facie case that defendant intended to discriminate on the basis of race).

[19] *Id.*

[20] *Id.* at 804.

[21] *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

status.[22]

The Court finds that plaintiffs have failed to establish a prima facie case of discriminatory intent in violation of section 1981. There simply exists no evidence in the record that the defendant, by and through the actions of Mr. Cahoj, was motivated by a discriminatory intent in calling 911. Plaintiffs do not even offer any evidence that defendant intended to discriminate on the basis of race. In plaintiffs' response to defendant's motion for summary judgment, plaintiffs allege that defendant engaged in racial profiling by "characterizing and treating plaintiffs as common criminals solely because of their skin color."[23] Plaintiffs also allege: "[o]n information an belief, throughout the relevant time period, there was an adverse link connecting certain management at Defendant Domino's and resultant discriminatory conduct, which link is evidenced by singling out African Americans, and other similarly situated persons of color, who entered its Randolph Avenue Store, thereby subjecting this unique class to acute observation, targeting and racial profiling in violation of state and federal law."[24] None of these allegations is supported by evidence in the record.

Plaintiffs point out that all of the five armed robberies committed at the restaurant prior to November 19, 2002, were committed by young black males, some wearing hooded sweatshirts. However, plaintiffs do not show how defendant, after having experienced these armed robberies, began subjecting African-Americans to observation, targeting and racial profiling. In fact, plaintiffs' counsel did not even ask questions about this alleged conduct despite the opportunity to do so in the deposition

---

[22]*Id.* (quoting *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir. 1991)).

[23](Doc. 38 at 2.)

[24](Id. at 3.)

of Mr. Cahoj.

Plaintiffs instead focus on the trauma and embarrassment they experienced when they were detained by the Topeka Police Department. While this experience was unfortunate and likely upsetting to the plaintiffs, plaintiffs cannot proceed with their section 1981 claim without showing a genuine issue of whether defendant intended to discriminate on the basis of race.

Moreover, even if plaintiffs had established a prima facie case, the Court concludes that plaintiffs' claims would fail. Defendant has proffered a legitimate, nondiscriminatory reason for calling the police in that Mr. Cahoj mistakenly believed that plaintiffs were "casing" the restaurant for a robbery. In the two years prior to November 19, 2002, defendant's restaurant had been subjected to five armed robberies. Mr. Cahoj saw the plaintiffs standing outside the restaurant for approximately two minutes before they entered. Plaintiffs were both wearing hooded sweatshirts with the hoods over their heads. Plaintiffs even admit that they believed wearing the hoods made them look suspicious. They claim that they removed the hoods inside of the restaurant when they noticed that Mr. Cahoj appeared nervous. Defendant has shown that plaintiffs' actions outside of the store caused Mr. Cahoj to believe that plaintiffs were "casing" the restaurant for a robbery and prompted Mr. Cahoj to telephone 911.

At most, the facts, when viewed in the light most favorable to plaintiffs, demonstrate that Mr. Cahoj made a mistake by suspecting plaintiffs to be robbers. "Mere negligence or mistake" does not support a claim for intentional discrimination.[25] Other than mere speculation and conjecture by the

---

[25] *Roe ex rel. Roe v. Keady*, 329 F.3d 1188, 1192-93 (10th Cir. 2003).

plaintiffs,[26] plaintiffs have failed to present any evidence that Mr. Cahoj's actions were a pretext for race discrimination or that defendant's proffered reason is unworthy of belief.  No reasonable jury could find in favor of the plaintiffs that defendant called the police on the basis of plaintiffs' race.  Therefore, the Court grants summary judgment on plaintiffs' section 1981 claim.

### B.    *State Law Claims*

Defendant further argues that it is entitled to summary judgment because plaintiffs have failed to demonstrate a genuine issue of fact with regards to plaintiffs' state law claims.  Plaintiffs filed this action invoking the Court's federal question jurisdiction and supplemental jurisdiction over plaintiffs' state law claims.  Because the Court grants summary judgment in favor of defendant on plaintiffs' federal claim, the Court is authorized to decline supplemental jurisdiction over the remaining state law claims.[27]  Whether to exercise  supplemental jurisdiction is committed to the court's sound discretion.[28]  28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental

---

[26] In his deposition testimony, plaintiff Gaines offered the following evidence to demonstrate that Mr. Cahoj called the police that night because plaintiffs are African-American:
> Well, I feel pretty much when you can't look another man in the eyes and talk to him and you act very suspicious around him and act like you're not going to pay him no attention because–I felt disrespected . . . .  So if we did nothing suspicious, there cannot be nothing left over but he thought we were going to rob him because we were black.

Plaintiff Worlds answered the same question in his deposition testimony by stating:
> I can't say that he called [the police] because we were black, but I mean, he probably got nervous and stereotyped us because we were black.

The record contains no evidence to support these assertions by the plaintiffs.

[27]  28 U.S.C. § 1367(c)(3).

[28]  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997); *see Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

10

jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'"[29]

Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.[30] This general practice is in keeping with the holdings of the Supreme Court and the Tenth Circuit.[31] "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[32] Here, there are no compelling reasons for this federal court to try plaintiffs' state law claims for the tort of outrage, defamation false light, and negligent infliction of emotional distress.

Further, plaintiffs are free to pursue their claims in a Kansas court because even if the statute of limitations would otherwise have run, 28 U.S.C. § 1367(d) tolls the statute of limitations during the time the claim is pending and affords them at least 30 days from a current federal court dismissal to commence a new action in the state court.[33] In this case, because discovery is complete, the Court conditions dismissal on use of all discovery in any subsequently filed state court case.

---

[29] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Commr's*, 365 F.3d 855 (10th Cir. 2004).

[30] *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (collecting cases); *see also Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).

[31] *Ball*, 54 F.3d at 669.

[32] *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[33] 28 U.S.C. § 1367(d). *Cf. Jinks v. Richland County, S.C.*, 538 U.S. 456, 466-67 (2003) ("no constitutional doubt arises from holding that [a] claim against . . . a political subdivision of a State–falls under the definition of 'any claim asserted under subsection (a).'"). Kansas's "saving statute", K.S.A. 60-518, affords a plaintiff six months to commence a new action if a previous timely action failed "otherwise than upon the merits." Examples of such failures include dismissal without prejudice. *See Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989). If applicable, this time frame controls over the 30-day tolling period in 28 U.S.C. § 1367(d).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 32) is **GRANTED** with respect to plaintiffs' section 1981 claims.

**IT IS FURTHER ORDERED** that because the Court declines to exercise supplemental jurisdiction in this case, plaintiffs' state law claims are dismissed without prejudice.

**IT IS SO ORDERED**.

Dated this 29th day of September 2005.

                                                    S/ Julie A. Robinson

                                                    Julie A. Robinson
                                                    United States District Judge